IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 18-cv-02091-JLK

JESSICA KAUFMANN,

    Plaintiff,

v.

JOE IRVIN, dba Petra Environmental Systems, Inc.,

    Defendant.

**OPINION AND ORDER GRANTING MOTION TO DISMISS
AMENDED COUNTERCLAIM (ECF NO. 22)**

Kane, J.

This case involves the stormy failure of an adulterous relationship. Plaintiff Jessica Kaufmann alleges that, after she terminated her relationship with Defendant Joe Irvin, Mr. Irvin threatened her and badmouthed her in their industry. She brings claims for defamation, outrageous conduct, and intentional infliction of emotional distress.[1] Defendant Irvin alleges that he, not Ms. Kaufmann, terminated their relationship because he chose to remain with his wife and that Ms. Kaufmann brought this suit in retaliation. He brings a counterclaim for abuse of process.

Ms. Kaufmann moves to dismiss Mr. Irvin's abuse of process counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Irvin has failed to adequately

---

[1]Although Ms. Kaufmann pleaded outrageous conduct and intentional infliction of emotional distress as two separate claims, under Colorado law, these are two ways of stating the same claim. *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (analyzing claim for "intentional infliction of emotional distress by outrageous conduct").

1

plead that she has used this legal proceeding in an improper manner. *See* Motion to Dismiss Amended Counterclaim, ECF No. 22. I agree, and accordingly dismiss Mr. Irvin's counterclaim.

On a motion under Rule 12(b)(6), I must decide whether the factual allegations in Defendant Irvin's counterclaim, if true, allow the court to draw a reasonable inference that Plaintiff Kaufmann is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, I consider the facts as alleged by Mr. Irvin in his counterclaim, which differ substantially from Ms. Kaufmann's account of their relations.

I.  Facts

Ms. Kaufmann and Mr. Irvin first met in 2013 while they were both working in the oil and gas industry in North Dakota. In October 2015, they began a romantic relationship despite the fact that Mr. Irvin was married. Mr. Irvin claims Ms. Kaufmann instigated the relationship by approaching him at their hotel, pushing her way into his room, and confessing that she had been in love with him for years and wanted to have a child with him. A few months later, Ms. Kaufmann resigned from the environmental engineering firm where she had been employed and began working at Mr. Irvin's oil and gas consulting business, Petra Environmental Systems, Inc.

Mr. Irvin ended their romantic relationship in February 2017, deciding instead to remain with his wife. Ms. Kaufmann reacted by texting and emailing him unprofessional, offensive, and vulgar comments, including the following: "I wish you were dead"; "A crash whatever"; "I would love to get up uninvited to your funeral pile and unload in front of

everyone you ever cared about what a complete lying POS you truly are"; "I hate you"; "I hate you so much and unless you're in a pine box I could not even think about ever looking at you or having a conversation with you"; "Did you manage to get it up to try and make up with her?"; "You and [your wife] are soulless uneducated southern f*cks"; "I know you have no morals and could not be a man and tell the truth no matters who's life depends on it"; and "You're an ass and an idiot . . . Wow are you as stupid as your wife." Am. Counterclaim at 9, ECF No. 20. Upon receiving these messages, Mr. Irvin blocked Ms. Kaufmann from calling or texting him and requested that she only contact him through email, with all communications to be kept professional and include another Petra employee.

Ms. Kaufmann also emailed Mr. Irvin's wife offensive and vulgar comments, telling his wife intimate details of their relationship and claiming that he did not love his wife "enough" to have a child with her. *Id.* at 9-10.

Additionally, Ms. Kaufmann threatened to sue Mr. Irvin numerous times for their failed romantic relationship and continued to escalate her communications and threats. For example, during a phone call with Mr. Irvin on April 27, 2017, Ms. Kaufmann stated "I'm taking you down" by legal action. *Id.* at 10.

In September 2017, Ms. Kaufman was terminated from Petra via correspondence from Petra's attorney, which noted the following incidents that precipitated her termination:

- Her threats to Mr. Irvin and Petra; foul and abusive language toward Mr. Irvin, Petra, and management; and derogatory comments made to Mr. Irvin, Petra, and third parties including Petra's CPA and Petra's customers;

- Her interference or attempted interference with Petra's banking, domain name, and ISNetworld account; and

- Her insubordination, inability to work with others, attempts to turn other employees against Mr. Irvin and Petra, and refusal to complete work assignments.

Ms. Kaufmann continued to send harassing emails to Mr. Irvin and his wife after she was terminated, even after Petra's attorney told her to stop. She likewise persisted with her threats that she was going to bring a lawsuit against Mr. Irvin. And, on August 16, 2018, Ms. Kaufmann filed this lawsuit, which Mr. Irvin asserts is retaliation for their failed romantic relationship.

## II. Discussion

Abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful action in the use of process that is not proper in the regular conduct of a proceeding, *i.e.*, use of a legal proceeding in an improper manner; and (3) damages. *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007). Ms. Kaufmann challenges only the second element of Mr. Irvin's abuse of process counterclaim, arguing that Mr. Irvin has failed to allege facts to support a reasonable inference that she has used this legal proceeding in an improper manner.

Specifically, Mr. Irvin alleges that, with this suit, Ms. Kaufmann knowingly concocted false facts and claims that have no cognizable basis and that she has included information about the parties' romantic relationship that is irrelevant to and outside the scope of her claims for the purpose of causing damage to Mr. Irvin, his reputation, his business, his wife, and his marriage. He contends that Ms. Kaufmann is improperly using the legal system to coerce him to rekindle their romantic relationship and to achieve the ulterior purpose she previously telegraphed—to "take down" and destroy him.

"An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012) (collecting Colorado cases). Usually the improper use "takes the form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (applying Colorado law) (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 121, at 898 (5th ed. 1984)); *accord James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). ("Classic examples of the requisite improper use include the use of process to accomplish a coercive goal which is not the intended legal purpose of the process.").

Examples of improper use of process include:

- Using a temporary restraining order not as a shield for protection but as a sword to keep its subject from entering an area of property whose ownership was disputed, *Trask v. Nozisko*, 134 P.3d 544, 548, 554 (Colo. App. 2006);

- Filing suit against a man's wife to gain leverage over her husband and obtain money from him without a valid claim, *Am. Guarantee & Liab. Ins. Co. v. King*, 97 P.3d 161, 165, 170-71 (Colo. App. 2003);

- Filing suit in "an inconvenient court that obviously and clearly lacked [personal] jurisdiction" to coerce a software owner and licensor to allow its licensee to sublicense the software in violation of restrictions contained in the license agreement, *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 201, 202-03 (Colo. App. 1998);

- Filing a notice of *lis pendens* to stop a pending sale of property to a third party and coerce the owner to sell the property for a lower price, *Salstrom v. Starke*, 670 P.2d 809, 810-11 (Colo. App. 1983); and

- Using a writ of replevin to extort payment of money not owed by threatening to repossess leased business equipment thereby shutting down the lessee's

business, *Aztec Sound Corp. v. W. States Leasing Co.*, 510 P.2d 897, 899 (Colo. App. 1973).

An improper use of process "cannot be inferred simply from an improper motive; there must be, at the least, an attempt to *use* the process improperly." *James H. Moore*, 892 P.2d at 374. There is no liability for abuse of process if the process was used for the purpose for which it is intended and the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *aff'd on other grounds*, 279 P.3d 659 (Colo. 2012). Thus, "bringing a . . . case and carrying it to its natural end to obtain a result such an action is designed to achieve doesn't constitute an improper use of process, no matter the motive." *Parks v. Edward Dale Parrish LLC*, No. 17CA1257, — P.3d —, 2019 WL 470515, at *4 (Colo. App. Feb. 7, 2019); *accord Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-MJW, 2019 WL 140710, at *5 (D. Colo. Jan. 9, 2019) (applying Colorado law) ("The filing of a lawsuit . . . even a baseless or frivolous one, where the suit . . . is followed through to its natural conclusion, is not using legal means improperly."). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, *even if the plaintiff . . . knowingly brought suit upon an unfounded claim*."[2] *James H. Moore*, 892 P.2d at 373 (emphasis in original).

Ms. Kaufmann asserts that Mr. Irvin's abuse of process counterclaim should be dismissed because he did not plead any improper use of process. She argues that the facts alleged by Mr. Irvin, taken as true, only establish that she brought suit with an ulterior

---

[2]Malicious prosecution is the cause of action that "addresses the situation where a person knowingly initiates baseless litigation." *Parks*, 2019 WL 470515, at *2 n.3 (quoting *Mintz*, 284 P.3d at 66).

purpose, but do not establish that she has used these legal proceedings in an improper manner.

Mr. Irvin's factual allegations do not support a reasonable inference that Ms. Kaufman has engaged in an improper use of this legal proceeding. As noted above, "concocting facts and claims" does not in itself constitute an improper use of process, so long as the proceeding is confined to its regular scope as the case is carried through to its natural conclusion. *James H. Moore*, 892 P.2d at 373; *accord Parks*, 2019 WL 470515, at *4; *Pinon Sun*, 2019 WL 140710, at *5. In order to state a claim, Mr. Irvin must allege facts sufficient to support a reasonable inference that Ms. Kaufmann has attempted to use this legal proceeding to accomplish some coercive purpose that is not simply incidental to the proceeding's proper purpose. His claims that Ms. Kaufman has improperly used this legal proceeding—(1) to damage his reputation, business, wife, and marriage, and to "take down" and destroy him and (2) to rekindle her romantic relationship with him—are insufficient.

Any harm that Mr. Irvin may suffer to his reputation or to his relationship with his wife as a result of this lawsuit is simply an incidental effect of the proceeding's proper purpose. Mr. Irvin argues that Ms. Kaufmann's complaint unnecessarily publicizes unflattering details of the parties' illicit romantic relationship for the purpose of causing him embarrassment and harm, but the factual allegations in Ms. Kaufmann's complaint, however tawdry, are appropriate, as they provide context for her claims and Mr. Irvin's motives for allegedly defaming her in the oil and gas industry.

This case is analogous to numerous others in which courts found no abuse of process where a party filed its claims with an ulterior motive but did not take any action to use the

legal proceeding or any procedural tool improperly.³ "The fact that there is an incidental motive or consequence of harassment or intimidation to a process that is otherwise invoked for its normal purpose does not give rise to a cognizable claim for abuse of process." *Tatonka Capital Corp. v. Connelly*, No. 16-cv-01141-MSK-NYW, 2016 WL 9344257, at *5 (D. Colo. Dec. 29, 2016) (report and recommendation, applying Colorado law), *adopted by* minute order (Mar. 3, 2017) (ECF No. 69).

Mr. Irvin's argument that Ms. Kaufmann seeks to use this suit to coerce the rekindling of the parties' relationship, however bizarre that might be, does not persuade. Mr. Irvin's counterclaim contains only the bare allegation that "[Ms.] Kaufmann is improperly manipulating the legal system and misusing it in order to coerce Irvin to rekindle the romantic relationship," with no additional supporting factual allegations. Am. Counterclaim ¶ 31. Mr. Irvin does not allege facts indicating that Ms. Kaufmann has made any request, attempt, or overture toward rekindling the parties' relationship either before or after she filed suit. Accordingly, while Mr. Irvin has alleged facts showing that Ms. Kaufmann was upset and angry when the parties' relationship ended, he has not alleged facts to support a

---

³*See, e.g.*, *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 213-14 (Colo. App. 2017) (no abuse of process where plaintiff allegedly filed suit to harass and intimidate defendant and run it out of business); *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011) (no abuse of process where plaintiff allegedly filed suit to "harass, embarrass, damage, burden and wrongfully obtain monies from defendants"); *Hertz*, 576 F.3d at 1117-18 (no abuse of process where defendant allegedly filed counterclaims "to retaliate against Plaintiff, to harass and intimidate Plaintiff, to cause Plaintiff to cease his lawful competition with Defendant, to prevent Plaintiff from making a living, and to ruin his reputation"); *Pinon Sun*, 2019 WL 140710, at *7 to *8 (no abuse of process where defendant allegedly filed counterclaims to put pressure on other parties and cause discord between plaintiff and third-party defendants); *Partminer Worldwide Inc. v. Siliconexpert Techs Inc.,* No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *2 to *3 (D. Colo. 2010) (applying Colorado law) (no abuse of process where plaintiff allegedly filed suit to "litigate [defendant] into oblivion"); *Gustafson*, 901 F. Supp. 2d at 1305 (no abuse of process where plaintiff allegedly filed suit to pressure defendant into closing his competing company).

8

reasonable inference that she has used or attempted to use this legal proceeding to coerce him into resuming the relationship.[4]

Mr. Irvin cites two cases in support of his argument that he has adequately pled an improper use of process. Both cases are distinguishable from this one. In *Peiker Acustic, Inc. v. Kennedy*, the defendant asserted that the plaintiffs filed suit for the ulterior purpose of gaining leverage in a separate case, and that the plaintiffs had improperly filed the action in a Michigan state court to inconvenience and intimidate the defendant, joining one of the primary plaintiff's subsidiaries as a party in order to manipulate the forum selection. No. 10-cv-02083-ZLW-MJW, 2010 WL 4977870, at *1 to *2 (D. Colo. Dec. 2, 2010) (applying Colorado law). Here, Mr. Irvin has not alleged that Ms. Kaufmann chose an improper venue[5] or has done anything else procedurally improper in the course of filing her suit.

Moreover, the *Peiker* court's statement that "an allegation that a lawsuit is . . . 'devoid of factual or legal support' can satisfy the 'improper use'" element of an abuse of process claim is no longer an accurate statement of law following the Colorado Supreme Court's decision in *Boyer v. Health Grades, Inc.*, 359 P.3d 25 (Colo. 2015). In *Boyer*, the court held that the heightened standard requiring an abuse of process claimant to show that the other parties' claims are "devoid of reasonable factual support or ha[ve] no cognizable basis in

---

[4]Mr. Irvin also argues that Ms. Kaufmann's allegations regarding the parties' romantic relationship somehow violate Colorado's "Heart Balm Statute," C.R.S. § 13-20-202, which abolishes causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction. The statute "only precludes those causes of action specifically listed," but a plaintiff may not "mask one of the abolished actions behind a common law label." *Destefano v. Grabrian*, 763 P.2d 275, 282 (Colo. 1988). Ms. Kaufmann's claims for defamation, outrageous conduct, and intentional infliction of emotional distress are not disguised claims for seduction or one of the other abolished causes of action and thus do not violate the statute.

[5]Mr. Irvin's motion to dismiss for lack of personal jurisdiction was previously denied. *See* Order Denying Mot. to Dismiss Am. Compl., ECF No. 17.

law" does not apply in a purely private dispute, such as this one, that does not involve a matter of public concern. In private disputes, "the filing of a baseless lawsuit is neither necessary nor sufficient" to show an abuse of process. *Pinon Sun*, 2019 WL 140710, at *6. The other case that Mr. Irvin cites in support of his arguments, *Daviscourt v. Columbia State Bank*, also predates *Boyer*, and concludes without any specific analysis of the improper use element that "it would be inappropriate to dismiss th[e] [abuse of process] counterclaim at this point." No. 05-cv-00687-WYD-BNB, 2007 WL 2889705, at *5 (D. Colo. Sept. 26, 2007) (applying Colorado law).

### III. Conclusion

Mr. Irvin has not pled any improper use of process by Ms. Kaufmann. Although Ms. Kaufmann may have ulterior motives in bringing this suit, she has requested relief consistent with the claims she has alleged. Mr. Irvin has not pled facts showing that she has attempted to use this proceeding to coerce relief outside the scope of her claims, other than that which is incidental to the proceeding's proper purpose. Accordingly, I grant Ms. Kaufmann's Motion (ECF No. 22) and dismiss Mr. Irvin's counterclaim.[6] The prospect of settlement and reconciliation here does not appear likely. If Mr. Irvin ultimately prevails in this suit, however, he may have a valid claim for malicious prosecution.

DATED this 20th day of June, 2019.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

---

[6] Ms. Kaufmann's original Motion to Dismiss Counterclaim (ECF No. 19) is consequently DENIED as MOOT, and the Clerk of the Court is DIRECTED to TERMINATE that Motion.